UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PANDORA JEWELRY, LLC,

    Plaintiff,

v.                                                         Case No. 8:06-cv-845-T-24 MSS

CAPPOLA CAPITAL CORPORATION
d/b/a Unodomani USA, Biagi Jewelry,
and Biagi Florida,

    Defendant.
_____/

## ORDER

This cause comes before the Court on the parties' motions for claim construction. (Doc. No. 81, 83). The Court held a <u>Markman</u> hearing on January 30, 2008.

### I. Background

Plaintiff Pandora Jewelry, LLC ("Pandora") is a designer and retailer of fine jewelry, and it has a patent on an invention consisting of necklaces and bracelets with keepers that keep ornaments from bunching ("507 Patent"). Plaintiff filed the instant suit against Defendant, claiming that Defendant infringed the 507 patent. The issue before the Court is the proper construction of the following three terms used in the 507 Patent: (1) fixedly attached, (2) ornament, and (3) keeper.

### II. Construction of the Claim Terms

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." <u>Innova Pure Water, Inc. v. Safari Water Filtration Systems, Inc.</u>, 381 F.3d 1111, 1115 (Fed. Cir. 2004)(citations omitted). Furthermore:

    [T]he words of a claim are generally given their ordinary and customary meaning.

> . . [T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention . . .. The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation.

<u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005)(internal quotation marks and citations omitted).

The Federal Circuit has instructed the courts as to the proper method for construing terms in a patent:

> To ascertain the meaning of claims, [a court] consider[s] three sources: The claims, the specification, and the prosecution history. Expert testimony, including evidence of how those skilled in the art would interpret the claims, may also be used.
>
> \*      \*      \*
>
> Claims must be read in view of the specification, of which they are a part. The specification contains a written description of the invention that must enable one of ordinary skill in the art to make and use the invention. For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims. . . . The written description part of the specification itself does not delimit the right to exclude. That is the function and purpose of claims.
>
> To construe claim language, the court should also consider the patent's prosecution history, if it is in evidence. This "undisputed public record" of proceedings in the Patent and Trademark Office is of primary significance in understanding the claims. The court has broad power to look as a matter of law to the prosecution history of the patent in order to ascertain the true meaning of language used in the patent claims[.] . . . Although the prosecution history can and should be used to understand the language used in the claims, it too cannot enlarge, diminish, or vary the limitations in the claims.
>
> \*      \*      \*
>
> The court may, in its discretion, receive extrinsic evidence in order to aid the court in coming to a correct conclusion as to the true meaning of the language employed in the patent.
>
> \*      \*      \*
>
> Extrinsic evidence is to be used for the court's understanding of the patent, not for the purpose of varying or contradicting the terms of the claims. When, after considering the extrinsic evidence, the court finally arrives at an understanding of the language as used in the patent and prosecution history, the court must then

pronounce as a matter of law the meaning of that language.

<u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 979-81 (Fed. Cir. 1995)(internal quotation marks and citations omitted). With these principles of law in mind, the Court construes the disputed claim terms.

### A.  **Overview of the Invention**

The 507 Patent is an invention that prevents the bunching of beads, baubles, bangles, pendants, and trinkets (collectively referred to as "ornaments") on a necklace or bracelet (collectively referred to as "strands") through the use of keepers and bands. In order to prevent bunching, the wearer attaches decorative keepers on the bands that are fixedly attached to the strand. The ornaments can pass freely over the bands that are attached to the strand, but when a keeper is attached to a band, the ornament cannot move past the keeper. Thus, the invention allows the wearer to configure and adjust the distribution of the ornaments on the strand in a manner that prevents the ornaments from bunching.

The three terms that need to be construed are (1) fixedly attached, (2) ornament, and (3) keeper. These terms appear in Claims 1, 13, and 16 of the 507 Patent. Accordingly, the Court will analyze each term.

### B.  **Ornament**

The first term the Court construes is "ornament." The central dispute regarding this term is whether a keeper is an ornament, since keepers are described as being decorative and having an ornamental pattern.

The term, ornament, is not defined in the patent. However, since the words of a claim are generally given their ordinary and customary meaning, the failure to provide a definition is of no

consequence.

In the description of the invention, the patentee states that baubles, bangles, pendants, trinkets, and beads are strung on a strand, and that they are collectively referred to as "beads" throughout the patent. (col. 3, ln. 13-14). It further states that beads are free to slide back and forth on the strand, and that the bores of beads are large enough to allow them to pass over both threaded and unthreaded bands. (col. 3, ln. 38-40; col. 5, ln. 12-15).

When reading the claims, it is clear that the term ornaments in the claims refers to the items referred to as "beads" in the description section of the patent. Thus, ornaments have bores that are larger than both threaded and unthreaded bands, which allow the ornaments to freely pass over the bands and slide back on forth on the strand until they come in contact with a keeper.

This construction of ornaments is consistent with the prosecution history of the patent. Specifically, in the "Notice of Allowability," the examiner states that this invention is different from a prior invention, because in this invention, the ornaments have bores that are larger than the bands, which permits complete passage of the ornament over the band. (Doc. No. 75-3, p. 31-36).

Thus, ornaments must have bores that are large enough to allow them to freely pass over bands. Keepers cannot do this. In the description of the invention, the patentee states that when hinged keepers are in the closed position, they cannot pass over bands because part of the bore is smaller than the diameter of the band. (col. 4, ln. 50-55; col. 3, ln. 33-34). Likewise, threaded keepers cannot freely pass over bands. Instead, they must be rotated over threaded bands in order to pass over them. (col. 5, ln. 41-46).

Accordingly, a central characteristic of ornaments is that their bores are large enough to allow them to completely pass over both threaded and unthreaded bands. Since all keepers cannot freely pass over all bands, keepers are not ornaments under the terms of this patent. This distinction between keepers and ornaments is reinforced by the fact that the claims refer to five key elements of the invention–the strand, the connector assembly, the band(s), the keeper(s), and the ornament(s).

Thus, the Court construes the term ornaments to mean a bead or other decorative element that may be removably strung on the strand, with an opening in its center that is large enough to allow it to freely pass over the bands attached to the strand, but not so large as to allow it to pass over a keeper. While keepers are decorative and may have some characteristics that are similar to ornaments, they do not fall within the construed definition of ornaments under the patent.

### C. Keeper

The next term that the Court construes is "keeper." Again, the central dispute over this term is whether keepers are ornaments. As discussed above, keepers are separate and distinct from ornaments. Specifically, a keeper is a device configured for reversible attachment over a band that prevents further movement of the ornaments along the strand when the keeper is attached to a band that is attached to the strand.

### D. Fixedly Attached

The final term the Court construes is "fixedly" attached. The central dispute over this term is whether fixedly means permanently, such that bands that are fixedly attached to a strand must be permanently attached to the strand.

The term "fixedly" is not defined in the patent. However, when considering the claims,

5

specification, and prosecution history, the Court concludes that fixedly means attached in a fixed position in either a permanent or reversible manner. Thus, bands that are fixedly attached to a strand are attached to the strand in a fixed position on the strand, and their attachment can either be permanent or non-permanent.

Defendant argues that fixedly refers to permanent attachment, based on the language used throughout the patent. For example, Defendant argues that since the keepers are described as being "reversibly" fixed to bands, and bands are described as being "fixedly" attached to strands, fixedly must mean non-reversible, and thus, permanent. The Court rejects this argument.

When the claims describe the keeper as being reversibly attached, it does so because it is describing the function of the keeper. When the keeper is attached, the ornaments cannot move past the keeper. However, when the wearer wants to change the distribution of the ornaments, or change decorative keepers, the wearer can do so, because the keeper is removable.

The bands, on the other hand, are described as being fixedly attached, because the claims are describing the function of the band. If the band is not attached in a fixed position on the strand, the invention does not work, because keepers attached to freely moving bands would not prevent bunching. Thus, in using the term "fixedly" attached, the claims are describing the purpose and function of the band–to be attached to the strand in a fixed position.

Next, Defendant argues that the detailed description of the invention describes the bands in a permanent manner. For example, it describes the preferable method for attaching a band on a strand, which is "by compression on the strand, by interaction with the links of a chain, or by adhesive, or any other suitable means of fixation of a band on a strand." (col. 5, ln. 36-40). Defendant argues that the examples given are things that would be done by the manufacturer that

6

would permanently attach the bands to the strand, and as such, the bands must be permanently attached to the strands. The Court does not share this interpretation.

At the hearing, Pandora gave examples as to how bands could be attached in ways set forth by the examples and still be reversible and/or done by the wearer. Additionally, Pandora gave the example that the unthreaded band could be made of rubber and the wearer could attach the band to the strand in whatever position the wearer selected (by sliding the band over the strand), and the band would be in a fixed position, removable, and attached by the wearer. Thus, the examples regarding the preferable methods of attachment do not dictate that bands must be permanent. Rather, the examples merely set forth different methods (but not all methods) that could be used to attach a band in a fixed position on the strand. Additionally, the sentence at issue specifically says that bands could be attached by "any other suitable means of fixation of a band on a strand."

Next, Defendant argues that the description of the invention describes the wearer stringing beads and keepers on the strand, but it does not describe the wearer attaching the bands to the strand. (col. 6, ln. 33-41). Accordingly, Defendant argues that such indicates that the wearer does not attach, and cannot remove, the bands. The Court disagrees. The description merely describes one way the invention can be used; nowhere in the description or in the claims does the patent state that the bands are attached by the manufacturer or that they must be permanently attached.

Furthermore, even if the detailed description of the invention did imply permanence, there is no indication that the bands must be permanent under the terms of the claim. To find that fixedly equates to permanence based on the detailed description of the invention would

7

improperly import a limitation from the specification into the claim terms.

An example of a district court improperly importing a limitation from the specification into the claim terms can be found in Ventana Medical Systems, Inc. v. Biogenex Laboratories, Inc., 473 F.3d 1173 (Fed. Cir. 2006). In Ventana, Ventana owned a patent relating to an automated method for dispensing reagent chemicals onto a slide. See id. at 1176. The issue on appeal was the proper construction of the term "dispensing" used in the claims. See id. at 1177.

The claims contained statements, such as: "A method of dispensing reagents onto a slide . . .," "determining whether reagent in the reagent container should be dispensed onto the slide," and "dispensing reagent in the reagent container onto the slide." Id. at 1177. The parties were disputing whether dispensing meant only direct dispensing–meaning that the reagent is dispensed directly from the reagent container onto the slide, rather than using an intermediate transport mechanism to transfer reagent from the reagent container to the slide. See id. at 1178.

The district court construed the term, dispensing, to mean direct dispensing. See id. The district court based its conclusion, in part, on the fact that the claims discussed the reagent being dispensed *onto* the slide, thus indicating direct dispensing from the container to the slide. See id. Furthermore, the district court noted that the written description and figures set forth in the patent supported the narrow construction. See id. The appellate court disagreed. See id. at 1180.

The appellate court stated that although the specification often describes very specific embodiments of the invention, courts cannot confine the claims of the patent to those embodiments. See id. at 1181 (citation omitted). As such, the appellate court rejected the district court's narrow construction of the term, dispensing.

8

Likewise, in the instant case, Defendant urges the Court to adopt a narrow construction of the term "fixedly" attached based on statements contained in the specification. Based on Ventana, this Court cannot adopt such a narrow construction.

Furthermore, by finding that fixedly attached includes permanent attachment, but does not require it, the Court is keeping in line with the spirit and purpose of the patent. The patentee specifically states in the patent that "[i]t will be apparent to those skilled in the art that the examples and embodiments described herein are by way of illustration and not of limitation, and that other examples may be used without departing from the spirit and scope of the present invention." (col. 6, ln. 53-57). Clearly, the heart of this patent is that ornaments can slide freely over the strand unless and until a keeper is attached to a band that is attached in a fixed position on the strand. How the bands are attached is not important–the important feature of the bands is that they are attached to the strand *in a fixed position* on the strand.[1]

The Court's broader interpretation is consistent with the expert opinion of Cosmo Altobelli, who states that a person with ordinary skill in the art would not read "fixedly attached" as "permanent attachment" of the band to the strand. (Doc. No. 76, p. 6). Also, this interpretation is consistent with how the claims in this patent are written. In Claim 27, the patentee specifically uses the word "permanently," thus showing that when the patentee wants to indicate permanence, it knows how to do so.

---

[1]Therefore, the Court rejects Defendant's argument that it would make no sense for the bands to be removable, because the wearer would have to engage in an unnecessary two-step process of attaching the band to the strand and then attaching the keeper to the band. Defendant's argument misses the point–under this invention, the bands could be removable (allowing the wearer to dictate their position) or they could be permanent (which would require the step of attaching the removable keeper to the band).

Based on the above, the Court construes the term "fixedly" when referring to the attachment of the band to the strand as meaning attachment to the strand, by either a permanent or reversible method, that keeps the band in a fixed position on the strand.

### III.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) The motions (Doc. No. 81, 83) are **GRANTED** to the extent that the Court has now construed the three disputed terms of the 507 Patent.

(2) The parties are directed to file all dispositive motions by February 22, 2008.

(3) The Court will hold a pretrial conference in this case on Thursday July 3, 2008 at 8:30 a.m. in Courtroom 14A of the Sam M. Gibbons U.S. Courthouse, located at 801 North Florida Avenue, Tampa, Florida 33602.

(4) The case is now set on the Court's August 2008 trial calendar.

**DONE AND ORDERED** at Tampa, Florida, this 4th day of February, 2008.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record